**BOARD OF COMMISSIONERS OF the
PORT OF NEW ORLEANS,
Plaintiff,**

v.

**The M/V GOTAMA JAYANTI, her
engines, etc., Defendant.**

**Civ. A. No. 66–496.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 28, 1967.

Edwin K. Legnon, New Orleans, La.,
for plaintiff.

Paul A. Nalty, New Orleans, La., for
defendant.

RUBIN, District Judge:

The Board of Commissioners of the Port of New Orleans has filed a libel in rem against the M/V GOTAMA JAYANTI to recover damages alleged to have been sustained by the Board's Public Grain Elevator as a result of its being struck by the M/V GOTAMA JAYANTI. The defendant has filed a motion to dismiss on the grounds that the plaintiff lacks procedural capacity to sue and that the plaintiff has no right to sue in its own name. For the reasons given below, both of defendant's contentions are without merit.

## WANT OF PROCEDURAL CAPACITY

The defendant's motion to dismiss for want of procedural capacity proceeds on the supposition that the Board is acting as the mandatary of the State of Louisiana. The provisions of the Civil Code of Louisiana relative to mandate apply when "one person gives power to another to transact for him and in his name, one or several affairs." [1]

When the State creates an agency by constitutional provision or by stat-

1. LSA–C.C. Art. 2985.

ute, this is not an act of mandate in the sense in which that term is used in private law. The creation of such a public body is a legislative function and the public body has the powers conferred .on it by the constitutional or statutory provision by which it is created, those conferred by any supplementary legislative acts, and any other powers implied by law.

The title of Louisiana Civil Code relative to mandate is obviously inappropriate for the regulation of such a relationship. It deals with a consensual relationship: "The contract of mandate is completed only by the acceptance of the mandatory."[2] When the Civil Code speaks, for example, "Of the Obligations of the Principal Who Acts by his Attorney in Fact," it deals with the conventional obligations that arise from the act of mandate.

The title Of Mandate is found in Book III of the Civil Code among the titles dealing with particular kinds of conventional obligations; it is preceded by the titles, Of Sale; Exchange; Lease; Rents and Annuities; Partnership; Loan; Deposit and Sequestration; and Aleatory Contracts. It is followed by the titles Of Suretyship, Transaction, or Compromise, Respite, Arbitration, Pledge, Privileges, and Mortgages.

█ It requires a wrench of words from context to interpret these articles on mandate as applicable to the relationship between the sovereign and those governmental agencies, branches, commissions or departments through which the sovereign chooses to exercise its governmental power.

██ This is not to say that the State may not act as a principal and may not employ mandataries. It may, of course, act through agents on occasion. But

when the State creates a governmental branch—or agency, if we use that term here at the risk of semantic confusion with the common law concepts of principal and agent—it is not acting as a principal appointing a conventional mandatary. The authorities cited by the defendant are therefore inapplicable, and the motion to dismiss for want of procedural capacity to sue is denied.

## NO RIGHT TO SUE IN ITS OWN NAME

The defendant next urges that the Board has no right to sue in its own name. Of course no one would suggest that the Board lacks the capacity to file suits because the legislature has not given it this authority *in haec verbae*. Indeed the motion refrains from going that far. It says the legislature once gave the Board the "powers and immunities incident to corporations."[3] Since corporations can sue, the motion concedes that the Board could then sue. But the motion urges that, when these words were deleted from the statutes [4] relative to the Board in the preparation of the Revised Statutes in 1950, the legislature manifested an intention to take away from the Board the power to sue.

The legislative history makes clear that the statutory revisions of 1950 were not made "to embody policy changes in the substance of the law," [5] although there is some authority for the proposition that, if there was a change in language that has substantive consequences, the law should be interpreted as thus rewritten.[6] However, even ·if the semantic changes in the 1950 revision have substantive consequences, the omission from LSA–R.S. 34:21 of the phrase in the prior law granting the Board the powers and immunities incident to corporations ap-

2. LSA–C.C. Art. 2988.

3. Act 14 of the 1915 Ex.Sess.

4. LSA–R.S. 34:1 ff.

5. Report of the Louisiana State Law Institute to the Legislature, reproduced in Vol. 1 of Louisiana Statutes Annotated at page 5; see LSA–R.S. 1:16. Bennett, Louisiana Revised Statutes of 1950, 11

La.L.Rev. 4, 6–7 (1950); Newsom v. Caldwell & McCann, La.App. 1 Cir., 1951, 51 So.2d 393, 394–395; cf. Gay v. United Benefit Life Insurance Company, 1957, 233 La. 226, 96 So.2d 497.

6. See City of Alexandria v. La Combe, 1952, 220 La. 618, 57 So.2d 206. See generally 15 La.L.Rev. 472 (1955).

pears to embody no change in policy or alteration in the powers of the Board. Instead, it seems more likely that the purpose of the revision was to delete words that referred to a body that is not a corporation [7] as if it were.

The Louisiana Constitution of 1921, Article 6, § 16, provides, in part, as follows:

> "The Board of Commissioners of the Port of New Orleans shall, except as herein otherwise changed and amended, have and exercise all power now conferred upon it by the Constitution, and such other authority as may be conferred by the Legislature."

Article 6, § 16.1 of the Constitution, adds by way of pleonasm if not for emphasis:

> "The Board of Commissioners of the Port of New Orleans shall except as otherwise herein changed and amended, have and exercise all powers now conferred by the Constitution or Statutes upon them; * * *."

The Constitution then suggests that the Board has power to sue in its own name because it provides that the Board has power to expropriate land,[8] to exempt property from taxation,[9] to levy and collect assessments,[10] and to adopt ordinances,[11] in addition to the power to contract. By statute, the Board is charged with the duty to administer "the public wharves, docks, sheds, and landings of the port of New Orleans which are owned and operated, or which may be purchased, acquired or operated by the board * * *,"[12] and, *inter alia*, "to charge for the use of the wharves, sheds, and other structures, for the use of all facilities administered by it, and for all services rendered by it, such fees, rates, tariffs, or other charges as it may establish," [13] in addition to the power to expropriate [14] and to adopt ordinances punishable by fine or imprisonment.[15] It thus has many of the powers of municipal corporations. It could hardly exercise these powers effectively without the implied power to sue to expropriate the land it has authority to take, to collect the fees it is authorized to charge, to enforce the contracts it is empowered to make, or, as here, to collect for damages to the facility it is charged to maintain.

It matters not for present purposes who the attorneys who file the suit may be. But in any event the reliance placed by the defendants on LSA–R.S. 13:5036 is obviously misplaced for that statute says only that, "The attorney general *may* institute and prosecute any and all suits he may deem necessary for the, protection of the interests and rights of the state." (Emphasis supplied.) It requires no lengthy effort of interpretation to demonstrate that the fact that the attorney general is *authorized* to prosecute suits to protect the State's interest does not deny that power to state boards, nor does it indicate in any fashion who is the proper party plaintiff in such suits. The sentence contains no such negative pregnant. Indeed, the Louisiana Supreme Court has indicated, at least in dicta, that the State itself should not be joined as a party in such suits, saying that the right of action in such cases belongs to the State agency involved.[16] I therefore reject defendant's contention that the Board has no right to sue in its own name and deny its motion to dismiss on that ground.

7. See Duffy v. City of New Orleans, 1896, 49 La.Ann. 114, 21 So. 179.

8. La.Const. of 1921, Art. 6, § 16.2.

9. Ibid.

10. Ibid.

11. La.Const. of 1921, Art. 6, § 16.3.

12. LSA–R.S. 34:21.

13. Ibid.

14. LSA–R.S. 34:23.

15. LSA–R.S. 34:25.

16. Department of Highways v. Thomas, 1942, 200 La. 73, 7 So.2d 619.